■ DONALD M. SHEPHERD et al., Respondents, v WHISPERING PINES, INC., et al., Appellants. (Action No. 1.) WHISPERING PINES, INC., Appellant, v TOWN OF GREENFIELD, Respondent. (Action No. 2.)—Casey, J. Appeals (1) in action No. 1, from an order of the Supreme Court (Plumadore, J.), entered August 22, 1991 in Saratoga County, which, *inter alia,* granted plain-

tiffs' cross motion for summary judgment for foreclosure and the appointment of a Referee, and (2) in action No. 2, from an order of said court, entered August 20, 1991 in Saratoga County, which granted defendant's cross motion for summary judgment dismissing the complaint.

In action No. 1 plaintiffs Donald M. Shepherd and Marjorie J. Shepherd (hereinafter plaintiffs) seek to foreclose on a mortgage held by them on real property located in the Town of Greenfield, Saratoga County, that was used as a campground (hereinafter the campground), which defendant Whispering Pines, Inc. purchased in November 1987. Defendants Gary E. Vitek and Janet Vitek (hereinafter defendants) formed Whispering Pines for the purpose of owning and operating the campground, and they are listed as co-obligors on the campground's note and mortgage. In action No. 2 Whispering Pines seeks specific performance compelling defendant Town of Greenfield to purchase 75 acres of the campground.

Plaintiffs, who had owned and operated the campground prior to 1981, reacquired the property in 1987 after they foreclosed on a mortgage that they held as a result of their sale of the campground in 1981. Plaintiffs listed the campground with a realtor, prompting defendants, who had owned and operated a campground in Essex County, to make some inquiries about the campground. According to defendants they asked to see the campground's books, but were told by plaintiffs that there were no account books. Plaintiffs also allegedly told defendants that the campground had to be generating $50,000 a year in gross sales. Defendants' examination of the campground, which took place after the camping season, revealed a sufficient number of campsites to generate a $50,000 gross income. Defendants thereafter formed Whispering Pines to purchase the campground.

In addition to the indebtedness secured by the purchase money mortgage held by plaintiffs, Whispering Pines borrowed $40,000 from a bank* to pay for various improvements to the campground. During the 1988 and 1989 camping seasons, the income generated by the campground, $20,000 and $28,000 respectively, was insufficient to meet expenses and defendants defaulted on their obligation to plaintiffs. When defendants were unable to sell the campground, plaintiffs commenced action No. 1 to foreclose on their mortgage. Defen-

---

* Whispering Pines executed a mortgage in favor of the bank, and plaintiffs agreed to subordinate their mortgage to the bank's mortgage.

dants' answer included affirmative defenses and counterclaims seeking equitable relief and damages based, *inter alia,* upon allegations that plaintiffs' misrepresentations as to gross revenue induced defendants to purchase the campground.

While action No. 1 was pending, plaintiffs' attorney advised defendants' attorney that an undisclosed third party was willing to purchase the campground. The parties ultimately entered into a stipulation in which defendants agreed to sell the campground to the third party for $265,000, retaining a one-acre parcel for themselves, and plaintiffs agreed to accept the reduced amount of $198,500 in satisfaction of the note and mortgage held by them. Defendants agreed to use the proceeds of the sale to pay all taxes due on the campground and to pay off any existing liens, including the first mortgage held by the bank. The stipulation provided for discontinuance of action No. 1 upon Whispering Pines' conveyance of the campground to the third-party purchaser, but the parties could resume active prosecution of their respective claims and counterclaims if the closing did not occur by January 31, 1991. When it was disclosed that there were actually two third-party purchasers (the Town, which was to purchase a 75-acre parcel for $250,000, and a Town Board member, who was to purchase the remaining 10-acre parcel), defendants refused to participate in any transaction which would involve the Town Board member's conflict of interest. In the meantime, the Town Board passed a resolution authorizing the Town to enter into an agreement to purchase the campground for $250,000. To resolve the conflict of interest problem, plaintiffs' attorney proposed that the 10-acre parcel be transferred to plaintiffs with a corresponding $15,000 reduction in the amount to be paid to plaintiffs to satisfy their mortgage. When defendants refused to make a separate conveyance of the 10-acre parcel, the deal essentially fell apart and the Town Board resolved to cease negotiations.

Whispering Pines thereafter commenced action No. 2 for specific performance alleging that the Town had breached its contract to purchase the 75-acre parcel for $250,000. The parties' cross motions for summary judgment in both actions resulted in an order dismissing the complaint in action No. 2 and an order directing foreclosure of plaintiffs' mortgage and the appointment of a Referee in action No. 1. These appeals by defendants and Whispering Pines ensued.

We turn first to action No. 2 and conclude that Supreme Court correctly dismissed the complaint. Relying upon *Village of Lake George v Town of Caldwell* (3 AD2d 550, *affd without*

*opn* 5 NY2d 727), defendants contend that the Town's resolution constitutes an enforceable contract. Unlike the resolution in the *Lake George* case, the Town's resolution merely authorized the Town Board to enter into an agreement for the purchase of the campground for $250,000. At best, the resolution constituted an agreement to agree, which is unenforceable under the Statute of Frauds *(see, e.g., Ramos v Lido Home Sales Corp.,* 148 AD2d 598, 599). Although there were subsequent negotiations, some of which involved the Town Attorney, it is clear from the record that there was no meeting of the minds between defendants and the Town Board on a number of material issues and the parties never executed a formal contract *(see, Danton Constr. Corp. v Bonner,* 173 AD2d 759). Supreme Court's order granting summary judgment to the Town in action No. 2 should, therefore, be affirmed.

Turning to action No. 1, we conclude that Supreme Court was correct in granting plaintiffs' cross motion for summary judgment. Defendants contend that their claims of misrepresentation by plaintiffs regarding the campground's revenue are sufficient to raise a question of fact. Defendants were experienced campground operators and they were aware that income of the business was a material fact about which they had received no documentation. They were also aware that the prior owners had defaulted on their mortgage. Defendants conceded that they considered plaintiffs' representation of income to be "an honest guess". In these circumstances, defendants, who could have protected themselves by including a condition subsequent that the sale would be rescinded if the actual gross income experienced was significantly less than the represented figure, willingly assumed the business risk that the facts might not be as represented *(see, Rodas v Manitaras,* 159 AD2d 341, 343). Defendants cannot claim that they were induced to enter into the transaction by a representation which they viewed as "an honest guess". A party claiming to have been deceived by a false representation "must not only reasonably believe that the representation is true, but * * * must also be justified in taking action in reliance thereon" *(Lanzi v Brooks,* 54 AD2d 1057, 1058, *affd* 43 NY2d 778). In the circumstances of this case, assuming that defendants believed plaintiffs' representation as to gross income, defendants were not justified in relying on the representation *(see, Atlantic Welding Servs. v Westchester Steel Fabricators Corp.,* 173 AD2d 1073, 1075).

We also reject defendants' contention that plaintiffs should be precluded from seeking foreclosure by the stipulation. The

terms of the stipulation permitted plaintiffs to resume their foreclosure action if the closing of the sale of the campground to the third parties did not occur. It is conceded that the sale did not close and, as already discussed, the Town cannot be compelled to purchase the 75-acre parcel. Nor is there any support in the record for defendants' claims of tortious interference with the closing of sale to the Town. Defendants' answer includes other affirmative defenses and counterclaims based upon misrepresentation, negligence, rescission and reformation, but defendants' failure to address these issues in their brief is tantamount to a waiver *(see, Newburgh Fire Dept. Fund v City of Newburgh,* 178 AD2d 837). The order granting summary judgment to plaintiffs in action No. 1 should therefore be affirmed.

Mikoll, J. P., Levine, Mercure and Mahoney, JJ., concur. Ordered that the orders are affirmed, with one bill of costs.